**07-1599-pr, 06-3550-pr, 07-3588-pr**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————

August Term, 2009

(En Banc Rehearing: July 9, 2010   Decided: October 18, 2010)

Docket Nos. 07-1599-pr, 06-3550-pr, 07-3588-pr
(consolidated for disposition)

————

CARLOS PORTALATIN,

*Petitioner-Appellee*,

-v.-                    No. 07-1599-pr

HAROLD GRAHAM, Superintendent, Auburn Correctional Facility,

*Respondent-Appellant.*

————

WILLIAM PHILLIPS,

*Petitioner-Appellant*,

-v.-                    No. 06-3550-pr

DALE ARTUS, Superintendent, Clinton Correctional Facility,
ANDREW M. CUOMO, New York State Attorney General,

*Respondents-Appellees.*

————

VANCE MORRIS,

*Petitioner-Appellant*,

–v.–                    No. 07–3588-pr

DALE ARTUS, Superintendent, Clinton Correctional Facility,
ANDREW M. CUOMO, New York State Attorney General,

*Respondents-Appellees.*[*]

―――――――――

Before:

JACOBS, *Chief Judge,* WINTER,[**] CABRANES, POOLER, SACK,[***]
KATZMANN, RAGGI, WESLEY, HALL, LIVINGSTON,
LYNCH, CHIN, *Circuit Judges.*

WESLEY, *J.*, filed the majority opinion in which JACOBS, *C.J.*, CABRANES, KATZMANN, RAGGI, HALL, LIVINGSTON, LYNCH, and CHIN, *JJ.*, joined.

WINTER, *J.*, filed a dissenting opinion in which POOLER and SACK, *JJ.*, joined.

Habeas petitioners challenge the constitutionality of sentences imposed pursuant to New York's persistent felony offender statute. *See* N.Y. Penal Law § 70.10. A previously constituted panel of this Court held that the state courts unreasonably applied the Supreme Court's construction of the Sixth Amendment in *Blakely v. Washington*, 542 U.S. 296 (2004), in affirming the petitioners' sentences, but remanded to the district court for harmless error analysis.

――――――――――

[*] The Clerk of the Court is directed to amend the official caption in this action to conform with that of this opinion.

[**] Senior Circuit Judge Winter was a member of the initial three-judge panel that heard this appeal, and is therefore eligible to participate in *en banc* rehearing. *See* 28 U.S.C. § 46(c)(1).

[***] Senior Circuit Judge Sack was a member of the initial three-judge panel that heard this appeal, and is therefore eligible to participate in *en banc* rehearing. *See* 28 U.S.C. § 46(c)(1).

*Besser v. Walsh*, 601 F.3d 163 (2d Cir. 2010). Following this rehearing *en banc*, and for the reasons discussed herein, the Court rejects that conclusion. Petitions denied.

The grant of Portalatin's petition is REVERSED, and the denials of Phillips's and Morris's petitions are AFFIRMED.

———————

LEONARD JOBLOVE, Ann Bordley, Assistant District
    Attorneys, *of counsel*, Kings County, Brooklyn,
    NY, *for Respondent-Appellant Harold Graham*

ANDREW C. FINE, The Legal Aid Society, Criminal
    Appeals Bureau, New York, NY, *for Petitioner-
    Appellant Vance Morris*

MARTIN M. LUCENTE (Andrew C. Fine, *on the brief*), The
    Legal Aid Society, Criminal Appeals Bureau,
    New York, NY, *for Petitioner-Appellant William
    Phillips*

BARBARA D. UNDERWOOD (Andrew M. Cuomo, Attorney
    General of the State of New York, Roseann B.
    MacKechnie, Deputy Solicitor General for
    Criminal Matters, Alyson J. Gill, Assistant
    Attorney General, of Counsel, *on the brief*),
    Solicitor General, *for Respondent-Appellees
    Andrew M. Cuomo and Dale Artus*

JOSHUA MICHAEL LEVINE (Lynn W.L. Fahey, *on the brief*),
    Appellate Advocates, New York, NY, *for
    Petitioner-Appellee Carlos Portalatin*

———————

WESLEY, *Circuit Judge*:

Petitioners Carlos Portalatin, William Phillips, and Vance Morris were separately convicted in state court and received sentences pursuant to New York's persistent felony offender statute, N.Y. Penal Law § 70.10. Each petitioned for a writ of habeas corpus on the ground that the New York courts engaged in an unreasonable application of clearly established federal law in affirming their sentences. Specifically, they argue that the Sixth Amendment guarantee of the right to an impartial jury, as construed by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and its progeny, proscribes the long-used sentencing procedure in New York that results in judicially enhanced sentences for certain recidivist offenders.

In the case of petitioner Portalatin, the United States District Court for the Eastern District of New York agreed, issuing a writ of habeas corpus from which the State now appeals. *See Portalatin v. Graham*, 478 F. Supp. 2d 385, 386 (E.D.N.Y. 2007) (Gleeson, *J.*). In the cases of petitioners Phillips and Morris, the United States District Court for the Southern District of New York separately declined to issue such writs. *See Phillips v. Artus*, No. 05 Civ. 7974,

2006 WL 1867386, at *1 (S.D.N.Y. June 30, 2006) (Crotty, *J.*); *Morris v. Artus*, No. 06 Civ. 4095, 2007 WL 2200699, at *1 (S.D.N.Y. July 30, 2007) (Sweet, *J.*).  Petitioners appealed.

In a consolidated appeal, a panel of this Court concluded that New York's persistent felony offender sentencing scheme violates the Sixth Amendment, and that the New York courts unreasonably applied clearly established Supreme Court precedent in holding otherwise, but remanded the matters to the district court for consideration of whether those errors were harmless.  *See Besser v. Walsh*, 601 F.3d 163, 189 (2d Cir. 2010).

A majority of judges in active service then called for this rehearing *en banc*.  The Court now holds that the state courts did not engage in an unreasonable application of clearly established Supreme Court precedent in affirming the convictions.  Accordingly, the grant of the writ to Portalatin is reversed, and the denials of the writ to Phillips and Morris are affirmed.

**Background**

*A.  New York's Recidivist Sentencing Scheme*

At issue in this case is the constitutionality of New York's persistent felony offender ("PFO") sentencing statute, which authorizes lengthy terms of imprisonment for certain recidivist offenders in New York.

New York was the first state in the Union to enact a recidivist sentencing law; that is, one that punishes repeat offenders more harshly than first-time offenders.  *See generally* Susan Buckley, Note, *Don't Steal a Turkey in Arkansas – the Second Felony Offender in New York*, 45 Fordham L. Rev. 76 (1976).  New York provided for the enhancement of sentences for second-time offenders beginning in 1796.  Act of March 26, 1796, ch. 30, 1789-1796 N.Y. Laws 669 (1887 ed.).  It subsequently added a mandatory life sentence for fourth-time offenders, Act of July 19, 1907, ch. 645, 1907 N.Y. Laws 1494-95, which was later reduced to an indeterminate term of between fifteen years and life, Act of April 4, 1932, ch. 617, 1932 N.Y. Laws 1312.  Ultimately, in revising the Penal Law in 1965, New York began to move away from that rigid mandatory framework — with respect to non-violent offenders — to permit judges

more flexibility in selecting a sentence that is not unduly harsh in any given case:

> The primary objection to the existing New York provisions is the mandatory feature which requires the court to blind itself to all relevant sentencing criteria, such as the circumstances surrounding the crime for which sentence is to be imposed, the nature and circumstances of the previous crimes, and the history, character and condition of the offender.

Comm. Staff Notes, reprinted in proposed New York Penal Law (Study Bill, 1964 Senate Int. 3918, Assembly Int. 5376), § 30.10 [now § 70.10], at 284.

Accordingly, Article 70 of New York's penal law now sets forth two categories of recidivists, or "persistent offenders." A persistent *violent* felony offender is defined as a person who stands convicted of a violent felony (as defined in N.Y. Penal Law § 70.02) and has previously been convicted of two or more violent felonies (as defined in N.Y. Penal Law § 70.04(1)(b)). Such an individual is subject to an enhanced sentencing range, with a maximum term of life in prison, and a minimum term fixed, based on the category of the offense, anywhere from twelve to twenty-five years. N.Y. Penal Law § 70.08(2), (3). A judge does not have discretion to depart from that enhanced range: "[w]hen

the court has found . . . that a person is a persistent felony offender the court *must* impose an indeterminate sentence of imprisonment [as provided herein]." *Id*. § 70.08(2) (emphasis added).

By contrast, subject to certain exceptions, a persistent felony offender is defined as a "person, other than a persistent violent felony offender . . . who stands convicted of a felony after having previously been convicted of two or more felonies." *Id*. § 70.10(1)(a).[1] Once a defendant is determined to be a PFO, he may receive an indeterminate sentence corresponding to that of a class A-I felony, which ranges from a minimum of fifteen to twenty-five years, and a maximum of life in prison. *Id*. §§ 70.10(2); 70.00(3)(a)(i). However, unlike New York's persistent *violent* felony offender statute, the PFO statute does not require the judge to impose a sentence within that elevated range. Instead, the decision whether to impose a class A-I sentence is within the judge's discretion. *Id*. § 70.10(2).

The PFO statute is therefore commonly referred to as the "discretionary" persistent felony offender statute. It

---

[1] The full text of the PFO statute is set forth in Appendix A, *infra*.

permits, but does not require, a class A-I sentence for certain recidivist felons. The procedure by which a judge determines whether to impose a PFO sentence in a particular case is set forth in New York Criminal Procedure Law § 400.20. Pursuant to that provision, the prosecution must first prove beyond a reasonable doubt that the defendant is a PFO — that is, that he has previously been convicted of two or more qualifying felonies — before an enhanced sentence is authorized. *See* N.Y. Crim. Proc. Law § 400.20(1), (5). But the court is also directed to engage in a second inquiry, and to assess whether a PFO sentence is warranted before imposing such a sentence, taking into consideration the "history and character" of the defendant and the "nature and circumstances of his criminal conduct." *Id.*

If, in the court's view, the undisputed allegations regarding the defendant's background and the nature of his criminal conduct justify the imposition of the enhanced sentence, and the court is satisfied that the defendant either has no relevant evidence to the contrary or such evidence would not affect the court's decision, then the court may impose a class A-I sentence (without a further

hearing) pursuant to § 70.10(2).  *See id*. § 400.20(8).
Otherwise, the court may schedule a hearing at which the prosecution and defendant are given an opportunity to present evidence as to whether the A-I sentence is warranted.  *Id*. § 400.20(9).  And, at the conclusion of that hearing,

> [i]f the court both finds that the defendant is a persistent felony offender and is of the opinion that a persistent felony offender sentence is warranted, it may sentence the defendant in accordance with the provisions of [Section 70.10(2)].

*Id*.  Throughout the proceeding the prosecution bears the burden of proof.  *Id*. § 400.20(5).  If the sentencing court imposes a class A-I sentence, "the reasons for the court's opinion shall be set forth in the record."  N.Y. Penal Law § 70.10(2).

To illustrate: A defendant who stands convicted as a first-time offender of a class D felony is subject to an indeterminate sentence, with a minimum term of no less than one year and no more than two and one third years, and a maximum term of between three years and seven years.  *See id*. § 70.00(2)(d), (3)(b).  Following the defendant's second conviction of a class D felony, he faces an indeterminate

sentence with a minimum term of between two years and three and one half years, and a maximum term of between four years and seven years. *See id*. § 70.06(3)(d), (4)(b). A subsequent conviction of a class D felony triggers the PFO statute. Once the prosecution proves the fact of defendant's two prior convictions beyond a reasonable doubt, the defendant is subject to a class A-I sentence, in the discretion of the court and pursuant to the procedure described above, with a minimum term of between fifteen and twenty-five years, and a maximum term of life in prison. *See id*. §§ 70.00(2)(a), (3)(a)(i), 70.10(2).[2]

*B. Facts and Procedural History*

    1. <u>*Carlos Portalatin*</u>

    On July 12, 2002, Portalatin accosted a man at gunpoint and forced him to drive to an empty street in Brooklyn. Following a struggle, the victim managed to escape, and

---

[2] The New York State Department of Correctional Services currently has custody of approximately 2,450 persistent felons who received sentences pursuant to either Section 70.08 or 70.10, which accounts for 4.2% of the total inmate population. State of New York Department of Correctional Services, Under Custody Report: Profile of Inmate Population Under Custody on January 1, 2010, available at http://www.docs.state.ny.us/research/reports/2010/undercustody_report.pdf; *see also* Joel Stashenko, *Penalties for 'Persistent' Felons Violate the Constitution, Circuit Says*, N.Y.L.J., Apr. 1, 2010, p.6, col. 1. The Department does not distinguish between persistent felony offenders, and persistent violent felony offenders, for statistical purposes.

Portalatin drove away in the car. He was convicted of robbery in the first degree and kidnaping in the second degree, both class B violent felonies. *See* N.Y. Penal Law § 70.02(1).

The prosecution asked the court to sentence Portalatin as a persistent felony offender. A sentencing hearing was held on April 28, 2003, at which the prosecution proved that Portalatin had been previously convicted of the following: (1) attempted burglary in the second degree in 1995; and (2) attempted criminal sale of a controlled substance in the fifth degree in 1998. Portalatin did not contest the existence of those convictions. The court concluded that Portalatin "appear[ed] to be eligible for discretionary persistent felony offender adjudication" based on those predicate offenses.

Next, at step two, the court conducted an assessment to determine whether a class A-I sentence was warranted. The court considered the circumstances of the crimes for which he was convicted, and also examined the history and character of the defendant:

>        [L]ooking back on the history of this defendant,
>        and having read these reports . . . [H]e began
>        his criminal career in 1989, and we have
>        beginning from that point on, the failure to take

advantage of opportunities that might have provided drug treatment, that might have in some way assisted him.  We have bench warrants repeatedly.  We have parole revocations, and repeated parole revocations to the extent that it's only when these sentences maxed out that he finally is released, and no sooner is he released than there is a new crime.

. . . .

He certainly has earned a persistent adjudication as I look at this Rap sheet and the circumstances of this offense and other offenses, and I'm going to adjudicate him a persistent felony offender.

The court imposed two indeterminate sentences of eighteen years to life imprisonment, to run concurrently.  Had the court elected not to sentence Portalatin as a PFO, he would have faced a determinate sentence of between ten and twenty-five years on each count.  *See* N.Y. Penal Law § 70.04(3)(a).

Portalatin appealed his conviction, contending that his sentence was imposed in violation of the Sixth Amendment, as construed by the Supreme Court in *Apprendi*.  On May 16, 2005, the Appellate Division affirmed the judgment, *People v. Portalatin*, 18 A.D.3d 673, 674, 795 N.Y.S.2d 334, 335 (2d Dep't 2005), and the New York Court of Appeals subsequently denied him leave to appeal, *People v. Portalatin*, 5 N.Y.3d 793, 793 (2005).  Portalatin then sought a writ of habeas corpus in the United States District Court for the Eastern

District of New York, which was granted.  *Portalatin*, 478 F. Supp. 2d at 407.  The State took this appeal.

### *2.  William Phillips*

On March 13, 1999, Phillips and another man robbed a magazine store in midtown Manhattan.  The evidence at trial established that Phillips entered the store with his accomplice, pulled a knife, and demanded money from the store manager.  He was convicted following a jury trial of one count of second-degree robbery (at the time a class C violent felony).

Following his conviction, the prosecution moved to have Phillips sentenced as a persistent felony offender pursuant to § 70.10.  Phillips's predicate felony offenses included: (1) in 1986, he was convicted of second-degree attempted robbery relating to an incident in which he and an accomplice "grabbed a man on a Bronx Street and forcibly stole his property"; (2) in 1987, he was convicted of third-degree burglary while awaiting sentencing on the 1986 Bronx conviction; (3) also in 1987, he was convicted of fourth-degree grand larceny arising from his theft of a wallet from an undercover police officer; (4) once again in 1987, he was

convicted of third-degree burglary arising from his theft of merchandise from a card store; (5) in 1990, following the completion of his sentences for the above charges, he was convicted of third-degree attempted robbery; and (6) in 1994, he was convicted of attempted criminal sale of a controlled substance in the third degree.  Phillips also had multiple misdemeanor offenses.

A sentencing hearing was held on January 4, 2000, at which the court heard arguments on the prosecution's § 70.10 motion.  Phillips did not dispute the existence of his six prior felony convictions.  Instead, he challenged the facts found by the jury in his case, maintained his innocence of the March 13, 1999, robbery, and attempted to persuade the court to exercise its discretion not to sentence him as a PFO.

On January 13, 2000, the court issued its ruling. First, the court made the threshold determination that "defendant has been convicted of two or more previous felonies and is a persistent felony offender within the meaning of [§ 70.10]."  The court then conducted a generalized assessment, and concluded that a class A-I sentence was warranted:

Defendant has demonstrated time and again, throughout his entire adult life, that he cannot be trusted to function normally in society and that he is unwilling and unable to rehabilitate himself. The history and character of defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision are warranted to best serve the public interest.

(citing N.Y. Crim. Proc. Law § 400.20(1); N.Y. Penal Law § 70.10). Phillips received an indeterminate sentence of sixteen years to life in prison. Had he not been sentenced as a PFO, he would have faced a determinate sentence of between seven and fifteen years. *See* N.Y. Penal Law §§ 70.02(1); 70.04(1), (3)(b).

Following his sentence, Phillips exhausted his appeals in state court, *see People v. Phillips*, 2 A.D.3d 278, 279, 768 N.Y.S.2d 812, 812 (1st Dep't 2003) (rejecting defendant's *Apprendi* challenge); *People v. Phillips*, 3 N.Y.3d 645, 645 (June 24, 2004), *on reconsideration*, 3 N.Y.3d 710, 710 (Sep. 30, 2004) (denying leave to appeal), and then brought the instant petition for a writ of habeas corpus in the United States District Court for the Southern District of New York on the grounds that his sentence was imposed in violation of the principle announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On June 30, 2006, the

district court rejected his *Apprendi* challenge and declined to issue a certificate of appealability. *Phillips*, 2006 WL 1867386, at *5-7. Phillips then moved for a certificate of appealability in this Court, which was granted.

### 3. *Vance Morris*

Morris was convicted following a jury trial of sixteen counts of criminal contempt in the first degree, a class E felony. *See* N.Y. Penal Law § 215.51(b). Four final orders of protection had previously been issued against Morris when the police were called to his ex-girlfriend's apartment on July 18, 2001. The woman informed the officers that Morris had come to her residence in violation of the orders of protection, repeatedly banged on her door, and threatened her. While the officers were still present, Morris twice called the apartment and left messages, each time threatening to kill the woman.

Following Morris's conviction, the State moved to sentence him as a persistent felony offender. At sentencing hearings held in April and July of 2002, Morris conceded various prior felony convictions, including: (1) a 1989 conviction for attempted robbery in the third degree; (2) a

1992 conviction for grand larceny in the fourth degree; (3) a 1992 conviction for attempted criminal possession of a controlled substance in the fifth degree; and (4) a 1994 conviction for robbery in the third degree. The court therefore concluded that Morris qualified as a persistent felony offender under Section 70.10.

Next, at step two, the court evaluated whether or not Morris should be sentenced as a PFO. The sentencing judge described the defendant's long history of "terrorizing" his ex-girlfriend, as well as several of her neighbors, who on several occasions felt it necessary to call the police for fear that "he's going to kill us all." In addition, while Morris was incarcerated at Riker's Island during the pendency of the case, he called his ex-girlfriend on thirty-two separate occasions in violation of the orders of protection. The court considered the defendant's other criminal history of violence toward women, which include numerous incidents in the subway, *inter alia*:

> firing a projectile in the face of a female
> passenger in 1986, twice snatching pairs of
> earrings from the ears of female passengers,
> slapping a [visibly] pregnant female in the face
> and snatching necklaces from her neck, twice
> engaging in public masturbation in the subway
> station in front of female witnesses and grabbing
> the buttocks of a female rider while threatening

a sexual assault on her.

The court concluded that Morris's "criminal record, which spans nearly two decades, establishes his propensity to prey upon helpless women generally, and upon [the ex-girlfriend] in particular.  It also serves to demonstrate his utter lack of self control and inability to be rehabilitated."  Morris was sentenced to sixteen indeterminate terms of fifteen years to life in prison, to be served concurrently.  If Morris had not been sentenced as a PFO, he would have faced a determinate sentence of between one and one half years and four years on each of the sixteen counts.  *See* N.Y. Penal Law § 70.06(3)-(4).

On direct appeal, Morris asserted an *Apprendi* challenge to his sentence.  The Appellate Division rejected that argument as unpreserved, as well as on its merits.  *See People v. Morris*, 21 A.D.3d 251, 251, 800 N.Y.S.2d 6, 7 (1st Dep't 2005).  The New York Court of Appeals denied leave to appeal on September 27, 2005, *People v. Morris*, 5 N.Y.3d 831, 831 (2005), and Morris submitted a petition for a writ of habeas corpus in federal court.  On July 30, 2007, the United States District Court for the Southern District of New York denied that petition.  *Morris*, 2007 WL 2200699, at

*1. Morris brought this appeal.

4. *The Consolidated Appeal and Panel Opinion*

Because the legal question presented by the three petitioners is identical — specifically, whether New York's recidivist sentencing scheme runs afoul of the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296 (2004) —  their appeals were consolidated by our Court.[3] The case was argued in front of a three-judge panel on April 16, 2008, and on March 31, 2010, the panel answered that question in the negative. *Besser v. Walsh*, 601 F.3d 163, 169 (2d Cir. 2010).  According to the panel, the Sixth Amendment principle announced in *Blakely* "prohibits the type of judicial fact-finding resulting in enhanced sentences under New York's PFO statute."  *Id*.  We ordered this

---

[3] This consolidated appeal originally included five petitioners, two of whom have been severed from this *en banc* rehearing (*Besser v. Walsh*, No. 05-4375-pr, and *Washington v. Poole*, No. 07-3949-pr).  Besser's conviction became final in state court well before the Supreme Court's decision in *Blakely*.  His appeal therefore does not present a unique legal question of "exceptional importance" for the Court, Fed. R. App. P. 35(a)(2), and is effectively disposed of by our existing precedent, *see Brown v. Miller ("Brown II")*, 451 F.3d 54, 55 (2d Cir. 2006); *Brown v. Greiner ("Brown I")*, 409 F.3d 523, 534-35 (2d Cir. 2005).  As a result, our decision in *Besser v. Walsh*, 601 F.3d 163, 169 (2d Cir. 2010), insomuch as it affirmed the judgment of the district court denying Besser's petition, remains final with respect to his appeal.  In addition, because Washington predeceased the resolution of his appeal, we vacated the district court's judgment and remanded that case with instructions to dismiss his petition as moot.  *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950); *Mfrs. Hanover Trust Co. v. Yanakas*, 11 F.3d 381, 383 (2d Cir. 1993).

rehearing *en banc* and, for the reasons stated below, we conclude that the state courts did not engage in an unreasonable application of clearly established Supreme Court precedent to conclude otherwise.  Each of the petitions is therefore denied.

## Discussion

*A. Standard of Review*

We review *de novo* a district court's decision to grant or deny a habeas corpus petition.  *See, e.g., Overton v. Newton*, 295 F.3d 270, 275 (2d Cir. 2002).  Since the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, federal habeas review of state court convictions has been narrowly circumscribed, *see Felker v. Turpin*, 518 U.S. 651, 654 (1996) (acknowledging that AEDPA "work[ed] substantial changes" to the ability of a federal tribunal to entertain a habeas petition).  Where, as here, the challenged state court decision was adjudicated on the merits,[4] the writ may

---

[4] Although the claims asserted by Portalatin and Morris were not preserved on direct appeal, thus independently barred as a matter of state procedural law, the Appellate Division in each case cited to the New York Court of Appeals decision in *People v. Rosen*, 96 N.Y.2d 329 (2001), to support its conclusion that those claims were defaulted.  *See Morris*, 21 A.D.3d at 251, 800 N.Y.S.2d at 7; *Portalatin*, 18 A.D.3d at 674, 795 N.Y.S.2d at 335.  As our Court has previously observed, the procedural analysis in *Rosen* was

not issue unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

To qualify as "clearly established" for the purposes of federal habeas review, a rule of law must be embodied in the "holdings, as opposed to the dicta," of Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). And, for a state court decision to be "contrary to," or an "unreasonable application of," that Supreme Court precedent, the decision must: (1) "arrive[] at a conclusion opposite to that reached by [the Supreme Court] on a question of law"; (2) "decide[] a case differently than [the Supreme Court] on a set of materially indistinguishable facts"; or (3) "identif[y] the correct governing legal principle . . . but unreasonably appl[y] that principle to the facts of the

necessarily interwoven with substantive federal law, and therefore a citation to *Rosen* for the proposition that a claim is procedurally barred does not present an "independent and adequate" procedural ground foreclosing review of the merits in a subsequent habeas proceeding. *See Brown II*, 451 F.3d at 56-57.

prisoner's case." *See id.* at 412-13. If none of these conditions is met, even if the federal court would have reached a different conclusion on direct review, the petition must be denied. "As we have interpreted [the AEDPA] standard, we decide not whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at the time." *Policano v. Herbert*, 507 F.3d 111, 115 (2d Cir. 2007) (internal quotation marks omitted). To that end, "the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow . . . As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

B. *"Clearly Established" Law:* Apprendi*,* Ring*,* Blakely*, and* Cunningham

In the seminal case of *Apprendi v. New Jersey*, the Supreme Court applied the Sixth Amendment's guarantee to a trial by an impartial jury to a state law triggering

enhanced sentencing ranges based on judicial factfinding. 530 U.S. at 490. There, a New Jersey hate-crime statute permitted the trial judge to impose an "extended term" of imprisonment if the judge found, by a preponderance of the evidence, that the defendant committed the crime "with a purpose to intimidate an individual or group" based on certain enumerated characteristics. *Id*. at 468-69. The Supreme Court struck down the statute as a violation of the Sixth Amendment. *Id*. at 497. Because the hate-crime statute permitted a sentencing judge to enhance a defendant's term of incarceration beyond the maximum otherwise authorized for the underlying offense, based on facts found by the judge by a preponderance of the evidence, the defendant was effectively being charged, convicted, and sentenced to a more serious crime without the protections of a jury trial.[5] *See id.* at 483. The Court in *Apprendi* set forth the rule and its exception, both now well settled: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

_____

[5] Apprendi was convicted of the crime of possession of a firearm for an unlawful purpose, punishable under New Jersey law by a term of imprisonment of five to ten years; following the hate-crime enhancement imposed by the sentencing judge, a term of ten to twenty years was authorized.

beyond a reasonable doubt." *Id*. at 490 (emphasis added).

The exception for prior convictions preserved the Court's earlier holding in *Almendarez-Torres v. United States*, which affirmed the constitutionality of the use of recidivism as a judicially determined "sentencing factor" authorizing an enhanced sentence. *See* 523 U.S. 224, 247 (1998). There, the Court rejected the argument that 8 U.S.C. § 1326(b)(2) violated a defendant's right to a jury trial because it authorized an enhanced penalty for any alien caught reentering the United States after being deported, if the initial deportation "was subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. § 1326(b)(2); *see id.* at 226-28. According to the Court, "the sentencing factor at issue here — recidivism — is a traditional, *if not the most traditional*, basis for a sentencing court's increasing an offender's sentence." *Almendarez-Torres*, 523 U.S. at 243 (emphasis added).

In reaffirming the constitutionality of the use of recidivism as a judicially-found sentencing factor, the Supreme Court has since emphasized that the existence of procedural safeguards embedded in prior criminal proceedings, as well as the lack of dispute or uncertainty

as to the "fact" of a prior conviction, "mitigate[] the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing the punishment beyond the maximum of a statutory range." *Apprendi*, 530 U.S. at 488.  To be sure, "[t]he Court's repeated emphasis on the distinctive significance of recidivism leaves no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing."  *Jones v. United States*, 526 U.S. 227, 249 (1999); *see also Parke v. Raley*, 506 U.S. 20, 26 (1992) (acknowledging that recidivism has formed the basis for sentencing enhancements "dat[ing] back to colonial times," and that recidivist sentencing laws were "currently . . . in effect in all 50 states").

The rule of *Apprendi* was later reinforced in *Ring v. Arizona*, in which the Supreme Court struck down a capital sentencing scheme that vested the trial judge with the discretion to determine the presence or absence of statutorily enumerated aggravating factors required for the imposition of a death sentence.  536 U.S. 584, 588 (2002). Under the Arizona law, a defendant could not be sentenced to

death unless the judge found at least one "aggravating circumstance." *Id*. at 592-93. Absent that factual finding, the defendant faced a maximum sentence of life in prison. *Id*. at 597. The result was therefore presaged by *Apprendi*: "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." *Id.* at 609 (quoting *Apprendi*, 530 U.S. at 494 n.19). That Arizona dubbed those findings "aggravating factors" altered the analysis no more than New Jersey's use of the term "sentencing enhancement," because "[t]he dispositive question . . . is one not of form, but effect." *Ring*, 536 U.S. at 602 (internal quotation marks omitted).

In *Blakely v. Washington*, the Supreme Court expanded[6] on

---

[6] We agree with the panel opinion insofar as it acknowledged that the principle announced in *Blakely* was not "clearly established" prior to its disposition. *See Besser*, 601 F.3d at 181-83; *see also Brown II*, 451 F.3d at 57 n.1; *Brown I*, 409 F.3d at 533-34. Because *Blakely* extended the rule of *Apprendi*, instead of merely applying it to a new set of facts, its holding was not "dictated" by prior Supreme Court precedent, and it therefore does not apply retroactively on collateral review under the *Teague* doctrine or AEDPA. *See Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion); *Mungo v. Duncan*, 393 F.3d 327, 333-34 (2d Cir. 2004). But the Supreme Court has not definitively stated when the 'snapshot' is taken to determine the universe of clearly established Supreme Court precedent for purposes of AEDPA. *Compare Williams*, 529 U.S. at 390 (referring to point at which the "state-court conviction became final") (Stevens, J., for the Court), *with id.* at 412 (focusing on the "time of the relevant state-court decision") (O'Connor, J., for the Court). This poses a question of federal law unique to one of the petitioners. Because *Blakely* was issued after the Appellate Division adjudicated Phillips's appeal on the merits, but before the New York Court of Appeals denied him leave to appeal, the time of that snapshot is relevant. Yet we need not resolve that question today. Even assuming the operative date to be the latter, for the reasons discussed *infra*, Phillips's reliance on

the principle announced in *Apprendi* when it was presented with a challenge to a sentence imposed pursuant to Washington's Sentencing Reform Act. 542 U.S. at 313-14. Blakely was convicted of "second-degree kidnaping involving domestic violence and use of a firearm," which carried a statutory maximum sentence of ten years. *Id*. at 298-99 (citing Wash. Rev. Code §§ 9A.40.030(1), 10.99.020(3)(p), 9.94A.125). However, pursuant to other statutory provisions, a sentencing judge was required to impose a "standard" sentence of between forty-nine and fifty-three months unless the judge found "substantial and compelling reasons justifying an exceptional sentence." *Id*. at 299 (quoting Wash. Rev. Code § 9.94A.120(2)). An illustrative list of aggravating factors was set forth in the Act, and the sentencing judge was required to set forth findings of fact and conclusions of law supporting a so-called "exceptional" sentence. *Id*. at 299. The trial judge decided to give Blakely an exceptional sentence of ninety months, based on the fact that he had acted with "deliberate cruelty," one of the enumerated grounds for departure. *Id*. at 300.

---

*Blakely* does not alter the resolution of his petition.

The Supreme Court reversed the sentence. The Court first restated the familiar rule (and exception) of *Apprendi*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 301 (emphasis added). But the *Blakely* court went further, and clarified that the relevant "statutory maximum" may not necessarily coincide with the maximum penalty prescribed by the penal code. Instead, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id*. at 303 (emphasis in original). For Blakely, the relevant "*Apprendi* maximum" was fifty-three months: Because the judge was powerless to sentence Blakely to anything more than fifty-three months based solely on his conviction and the facts admitted pursuant to his guilty plea, the statutory maximum was "no more 10 years . . . than it was 20 years in *Apprendi* (because that is what the judge could have imposed upon finding a hate crime) or death in *Ring* (because that is what the judge could have imposed upon finding an aggravator)."

*Id.* at 304.

Moreover, *Blakely* clarified that a sentencing scheme can violate the Sixth Amendment even if those "facts" that a sentencing judge is required to find are not specifically enumerated by statute. *Id*. at 305. That the list of aggravating circumstances in the Washington statute was "illustrative rather than exhaustive" did not elide the constitutional flaw: "Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or *any* aggravating fact (as [in *Blakely*])," *id*., the authority is derivative of an unconstitutional source. Because Blakely's ninety-month sentence could not have been imposed but for the judge's finding of "deliberate cruelty," it was imposed in violation of the Sixth Amendment. *Id*. Thus, *Blakely* settled that the *Apprendi* maximum is the sentence that is authorized based solely on those factual predicates that are found within the constraints of the Sixth Amendment. That is, those facts that are: (1) proven to a jury beyond a reasonable doubt; (2) admitted by the defendant; or (3) findings of recidivism.

Lastly, in *Cunningham v. California*, the Supreme Court

addressed the validity of California's determinate sentencing law ("DSL") in light of *Apprendi, Ring* and *Blakely.* *Cunningham v. California*, 549 U.S. 270, 274 (2007). Under the DSL, most substantive offenses were assigned three tiers of determinate sentences: a lower-, a middle-, and an upper-term sentence. *Id.* at 277. But the discretion of the trial judge to select either the upper-term or lower-term sentence was circumscribed: the statute provided that "*the court shall* order imposition of the middle term, *unless* there are circumstances in aggravation or mitigation of the crime." *Id.* (quoting Cal. Penal Code § 1170(b)) (emphasis added). Circumstances in aggravation were defined as "*facts* which justify the imposition of the upper prison term," which were to be "established by a preponderance of the evidence" and "stated orally on the record." *Id.* at 278 (quoting Cal. Jud. Council Rules 4.405(d), 4.420(b), 4.420(e)) (emphasis in original). Hence, the middle term was the default sentence absent further factual findings.

Cunningham was convicted of "continuous sexual abuse of a child" under the age of fourteen, for which the prescribed terms were six, twelve, and sixteen years, respectively.

*Id*. at 275.  At a post-trial sentencing hearing, the judge found by a preponderance of the evidence six aggravating circumstances including, *inter alia*, the "particular vulnerability" of his victim.  *Id*.  Cunningham was sentenced to the upper term of sixteen years.  *Id*. at 276.

The Supreme Court held that the DSL violated the Sixth Amendment.  In rejecting the State's argument that the *Apprendi* maximum was the upper-term sentence — for Cunningham, sixteen years — the Court reaffirmed the principle announced in *Blakely* that a sentence must be fully authorized by factual predicates obtained in compliance with the Constitution: "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied."  *Id*. at 290.  Because the judge was required to make a factual finding in order to impose the upper-term sentence, the *Apprendi* maximum was not the upper term, but the *middle* term, and the use of judicial factfinding to impose the upper term violated the Sixth Amendment.  *Id*. at 292-93.

Because *Cunningham* was decided well after the conviction of each petitioner became final, it is urged by

the State that we cannot consider it in our analysis. To the contrary, a Supreme Court holding is generally operative retroactively in a collateral proceeding so long as it does not announce a "new rule" within the meaning of *Teague*. *See, e.g., Beard v. Banks*, 542 U.S. 406, 411 (2004). "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or Federal Government. To put it differently, a case announces a new rule if the result was *not dictated by precedent existing at the time* the defendant's conviction became final." *Teague*, 489 U.S. at 301 (emphasis added, internal citations omitted). Similarly, under AEDPA, "clearly established federal law" is "law that is dictated by Supreme Court precedent existing at the time the defendant's conviction became final." *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (internal quotations and brackets omitted). Thus, if the holding of a case was "dictated" by extant Supreme Court precedent at a particular time, the constitutional rule embodied in that case was necessarily "clearly established" at that time.

In that light, we have no trouble concluding that the identification of a Sixth Amendment violation in *Cunningham*

was dictated at the time that the petitioners' convictions became final on direct review.[7]  Specifically, the decision in *Blakely* can be said to have compelled the result in *Cunningham*, because *Blakely* left no doubt that the *Apprendi* maximum is the highest sentence authorized by constitutionally-obtained factual predicates alone: those contained in the jury verdict, those admitted by the defendant, and those respecting recidivism.  *See Blakely*, 542 U.S. at 305.  Thus, it should have been "apparent to all reasonable jurists," *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997), that the demise of California's DSL was portended by the holding of *Blakely*.  The State offers no persuasive analytical distinction between the sentencing schemes in *Blakely* and *Cunningham*, nor can we discern any.[8]

---

[7] For the purposes of *Teague*, a state conviction becomes "final" when "the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994).  The moment of finality for *Teague* purposes is not to be confused with the relevant time for determining what federal law is "clearly established" for purposes of AEDPA.  The two concepts are distinct, and we express no view as to the proper time at which to fix the latter.  *See supra* note 6.

[8] The existence of dissenting opinions in *Cunningham* does not persuade us otherwise.  *See* 549 U.S. at 295 (Kennedy, J., dissenting); *id*. at 310 (Alito, J., dissenting).  The dissenters questioned whether California's DSL might be susceptible to a remedial construction akin to that afforded the federal sentencing scheme in *Booker*, *see id.* at 297-311 (Alito, J., dissenting), and expressed fundamental disagreement with *Apprendi* itself, positing a limiting principle to reduce its collateral effects, *see id.* at 295-97 (Kennedy, J., dissenting).  In any event, we do not presume that a non-unanimous decision by the Supreme Court necessarily establishes a "new rule" of law.  *See, e.g., Banks*, 542 U.S. at 416 n.5 ("Because the focus of the

*See Butler v. Curry*, 528 F.3d 624, 636 (9th Cir. 2008) (noting that the Court in *Cunningham* "simply applied the rule of *Blakely* to a distinct but closely analogous sentencing scheme"). Because *Cunningham* did not extend the principle announced in *Blakely*, but merely applied it to a new set of facts, we hold that *Cunningham* constitutes "clearly established law" for the petitioners.

Nevertheless, for reasons discussed in the remainder of this opinion, we conclude that neither *Cunningham* nor any other clearly established Supreme Court precedent supports the petitioners' position.

*C.* Apprendi *and New York's PFO Statute*

    1. *The operative interpretation:* Rosen, Rivera *and* Quinones

The New York Court of Appeals has interpreted the PFO statute on three occasions since the Supreme Court's decision in *Apprendi*, each time affirming its constitutionality in response to Sixth Amendment challenges. *See People v. Quinones*, 12 N.Y.3d 116, 131 (2009); *People v. Rivera*, 5 N.Y.3d 61, 71 (2005); *People v. Rosen*, 96 N.Y.2d

---

inquiry is whether *reasonable* jurists could differ as to whether precedent compels the sought-for rule, we do not suggest that the mere existence of a dissent suffices to show that the rule is new." (emphasis in original)).

329, 336 (2001). Of course, we do not defer to that court's interpretation of *federal* law, but we are bound by its construction of *New York* law in conducting our analysis. We examine each case in turn.

In *Rosen*, the New York Court of Appeals rejected for the first time an *Apprendi* challenge to New York's PFO statute. *See* 96 N.Y.2d at 335. The court acknowledged the familiar rule of *Apprendi*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 334 (quoting *Apprendi*, 530 U.S. at 490). But the court went on to hold that the only "fact" necessary to impose a PFO sentence under § 70.10 is the "fact" of recidivism, placing the PFO statute squarely within the exception to the rule: "It is clear from the . . . statutory framework that the prior felony convictions are the *sole determin[ant]* of whether a defendant is subject to enhanced sentencing as a persistent felony offender." *Id.* at 335 (emphasis added). Only after that finding is made will a court look to the defendant's "history and character," and the "nature and circumstances of his criminal conduct," to determine where,

within this now expanded sentencing range, a sentence *should* be imposed. *See id.* To that end, "the sentencing court is thus only fulfilling its traditional role — giving due consideration to agreed-upon factors — in determining an appropriate sentence within the permissible statutory range." *Id*.

In *Rivera*, the New York Court of Appeals revisited the constitutionality of § 70.10 in light of *Blakely* and *Ring*, and repeated its conclusion that recidivism findings are the only necessary factual predicates to impose a PFO sentence. Because "[t]he statute *authorizes* indeterminate sentencing once the court finds persistent felony offender status," *Rivera*, 5 N.Y.3d at 66 (emphasis added), the court held, "the predicate felonies are both necessary and sufficient conditions for imposition of the authorized sentence for recidivism; that is why we pointedly called the predicate felonies the 'sole' determinant [in *Rosen*]," *id*. at 68 (quoting *Rosen*, 96 N.Y.2d at 335).

The court acknowledged that the statute, as written, is susceptible to a construction that would pose an *Apprendi* problem:

> We could have decided *Rosen* differently by reading the statutes to require judicial

factfinding as to the defendant's character and criminal acts *before* he became eligible for a persistent felony offender sentence. If we had construed the statutes to require the court to find additional facts about the defendant before imposing a recidivism sentence, the statutes would violate *Apprendi*.

*Id.* at 67 (emphasis in original). But, as the court

explained, the statutes raise no constitutional concern

because

we did not read the law that way. Under our interpretation of the relevant statutes, defendants are eligible for persistent felony offender sentencing based *solely* on whether they had two prior felony convictions.

*Id.* (emphasis in original).

In thus reiterating its construction of the PFO statute

in *Rosen*, the court in *Rivera* clearly construed state law to

provide for an expanded range of authorized sentences once a

defendant is adjudged a persistent felony offender, at which

point the trial judge is directed to exercise discretion in

determining where within that newly expanded range to impose

a sentence:

The statutory language requiring the sentencing court to consider the specified factors and to articulate the reason for the chosen sentence grants defendants a right to an airing and an explanation, not a result.

. . . .

> [A] defendant adjudicated as a persistent felony offender has a statutory right to present evidence that might influence the court to exercise its discretion to hand down a sentence as if no recidivism finding existed, while the People retain the burden to show that the defendant deserves the higher sentence.

*Id*. at 68. In other words, according to New York's highest court, the maximum "range" of available sentences is established once the defendant is proven to have two prior qualifying felonies: The judge may impose a sentence within the range permitted for an A-I felony, or may instead impose a lower sentence within the range permitted for a second felony offense.

*Rivera* also addressed the statute's "mandatory consideration and articulation" of those factors that a trial judge finds relevant in determining what sentence to impose. *Id*. at 69. The court interpreted that legislative directive to serve two distinct functions.

First, it provides a defendant with notice and an opportunity to respond to those factors that the court deems relevant to the exercise of its sentencing discretion within the ranges authorized by the PFO statute. "The statutory language requiring the sentencing court to consider the specified factors and to articulate the reason for the

chosen sentence grants defendants a right to an airing and an explanation, not a result."  *Id*. at 68; *cf. Rita v. United States*, 551 U.S. 338, 356 (2007) ("Confidence in a judge's use of reason underlies the public's trust in the judicial institution.  A public statement of those reasons helps provide the public with the assurance that creates that trust.").

And second, the judge's articulation of reasoning facilitates an appellate review function that is distinct from the issue of whether the PFO sentence was lawfully imposed.  In New York, intermediate appellate courts are vested with the capacious authority to review and modify criminal sentences in the interests of justice.  *See* N.Y. Crim Proc. Law § 470.15(3)(c).[9]  Notably, that oversight power is unrelated to the legality of the sentence; the power to reverse or modify a sentence based on a *legal* error is addressed separately in the statute.  *See id.* § 470.15(3)(a).  Even absent legal error, it rests within the discretion of the Appellate Division to modify a sentence in the interest of justice if it is deemed to be "unduly harsh

---

[9] "A reversal or a modification of a judgment, sentence or order must be based upon a determination made . . . [a]s a matter of discretion in the interest of justice."  N.Y. Crim. Proc. Law § 470.15(3)(c).

or severe."[10]  In that light, *Rivera* notes, a sentencing judge should set forth those considerations deemed relevant to the imposition of a PFO sentence for the benefit of an appellate court that must later determine whether the sentence was too severe.  *Rivera* explains:

> [O]nce a defendant is adjudged a persistent felony offender, a recidivism sentence *cannot be held erroneous as a matter of law*, unless the sentencing court acts arbitrarily or irrationally.
>
> The court's opinion is, of course, subject to appellate review, as is any exercise of discretion.  The Appellate Division, in its own discretion, may conclude that a persistent felony offender sentence is too harsh or otherwise improvident.  In this way, the Appellate Division can and should mitigate inappropriately severe applications of the statute.  A determination of that kind, however, is based not on the law but as an exercise of the Appellate Division's discretion in the interest of justice as reserved uniquely to that Court.

5 N.Y.3d at 68-69 (emphasis added) (citing N.Y. Crim. Proc. Law § 470.20(6)).  *Rivera* thus concluded that the PFO statute does not violate the principle announced in *Blakely,* because it simply creates a recidivist sentencing scheme: the only factual predicates necessary for a judge to impose

---

[10] "Upon modifying a judgment or reversing a sentence as a matter of discretion in the interest of justice upon the ground that the sentence is unduly harsh or severe, the court must itself impose some legally authorized lesser sentence."  N.Y. Crim. Proc. Law § 470.20(6).

a class A-I sentence are those respecting the defendant's criminal history, and it therefore falls within the carve-out of *Almendarez-Torres*.  *Id*. at 67.

Most recently, in *Quinones*, the New York Court of Appeals reaffirmed the validity of the PFO statute in light of the Supreme Court's decision in *Cunningham*, which it found readily distinguishable.  It reiterated much of the reasoning of *Rivera*, concluding that

> the New York sentencing scheme, after a defendant is deemed eligible to be sentenced as a persistent felony offender, requires that the sentencing court make a qualitative judgment about, among other things, the defendant's criminal history and the circumstances surrounding a particular offense in order to determine whether an enhanced sentence, under the statutorily prescribed sentencing range, is warranted.  Stated differently, New York's sentencing scheme, by requiring that sentencing courts consider defendant's "history and character" and the "nature and circumstances" of defendant's conduct in deciding where, within a range, to impose an enhanced sentence, sets the parameters for the performance of one of the sentencing court's most traditional and basic functions, i.e., the exercise of sentencing discretion.

12 N.Y.3d at 130.

2. <u>Brown I *and* Brown II</u>

Our Court has examined the PFO statute on two prior

occasions. Each was presented in the posture of a habeas petition, and in both cases we denied relief.

In *Brown I*, we deemed it a reasonable conclusion by the state court that "the judicial finding of at least two predicate felony convictions comported with the dictates of *Apprendi*," and noted that the second-prong inquiry called for under the PFO statute "is of a very different sort" from the judicial factfinding proscribed by *Apprendi*. 409 F.3d at 534. "It is a vague, amorphous assessment of whether, in the court's 'opinion,' 'extended incarceration and life-time supervision' of the defendant 'will best serve the public interest.'" *Id*. (quoting N.Y. Penal Law § 70.10(2)). In sum, "[w]e [could not] say the New York Court of Appeals unreasonably applied *Apprendi* when it concluded that this second determination is something quite different from the fact-finding addressed in *Apprendi* and its predecessors." *Id*. at 534-35.

In *Brown II*, we revisited the issue in light of the Supreme Court's holding in *Ring*, and found the PFO statute to be distinguishable from the Arizona capital sentencing

scheme invalidated in *Ring*.  *Brown II*, 451 F.3d at 59.[11]  We noted that "*Ring* did not expound upon the rule announced in *Apprendi* in a way that is significant to the disposition of this case."  *Id*.  "Each case involved a statute that required the sentencing judge to find some specified fact before imposing an enhanced sentence."  *Id*.  Thus, we concluded that it was not unreasonable for the state court to identify a crucial distinction between the unconstitutional factfinding required under the statutes at issue in both *Ring* and *Apprendi*, and the discretionary assessment called for by the PFO statute.  *Id*.

But neither *Brown I* nor *Brown II* speaks to the question that we face today: In light of the New York Court of Appeals' construction of the PFO statute in *Rivera*, and the Supreme Court holdings in *Blakely* and *Cunningham*, does the PFO statute suffer from a constitutional defect that the state courts were objectively unreasonable to overlook?  We hold that it does not.

---

[11] Although decided in 2006, *Brown II* did not consider the effects, if any, of *Blakely* on the validity of the PFO statute because the petitioner's conviction in *Brown II* became final before *Blakely* was decided.  *Brown II*, 451 F.3d at 57 n.1.

D. *The New York courts did not engage in an unreasonable application of clearly established Supreme Court precedent in affirming the petitioners' sentences.*

Petitioners rely principally on two distinct, though related, arguments to support their contention that the PFO statute requires sentencing judges in New York to engage in unconstitutional factfinding. First, they urge that the step two determination under the PFO statute violates the Sixth Amendment because a sentencing judge is required to make factual findings beyond those respecting the predicate felony convictions before imposing a class A-I sentence. Second, they argue that even if a judge *may* impose a PFO sentence based solely on the defendant's predicate felony convictions, the step two determination nonetheless entails unconstitutional factfinding because a judge is required to form a qualitative judgment *about* the defendant's criminal history before imposing a PFO sentence, an inquiry that necessarily implicates facts beyond the purview of *Almendarez-Torres*.

Petitioners' first contention is that the step two determination under the PFO statute (whether a class A-I sentence is warranted) consists of impermissible factfinding under *Blakely* because it requires the judge to hold a

hearing and set forth findings of fact, beyond those of the prior convictions, before she may impose a PFO sentence. For the reasons that follow, we cannot say that the state courts were unreasonable to reject this argument.

Whether the step two determination under the PFO statute entails unconstitutional factfinding hinges not on its *nature*, but its *effect*.  A core principle has guided this aspect of the Supreme Court's jurisprudence in the wake of *Apprendi*: judicial factfinding violates a defendant's right to a jury trial when it results in a sentence in excess of the *Apprendi* maximum for a given offense.  The *Apprendi* maximum, in turn, is the apogee of potential sentences that are authorized based on factual predicates obtained in compliance with the Sixth Amendment: those found by the jury, those admitted by the defendant, and findings of recidivism.  In contrast, judicial factfinding that is undertaken to select an appropriate sentence *within* an authorized range — up to and including the *Apprendi* maximum — does not offend the Sixth Amendment.  For "the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power."  *Blakely*, 542 U.S. at 308.  "The Sixth Amendment question, the Court has said,

is whether the law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)."  *Rita*, 551 U.S. at 352 (citing *Blakely, Cunningham* and *Booker*) (emphases in original).

Our analysis must therefore begin with the PFO statute to determine the *Apprendi* maximum for each petitioner.  That assessment is necessarily guided by the construction placed on the statute by the New York Court of Appeals, which, with some emphasis, has interpreted the statute to authorize a class A-I sentence based on the defendant's predicate felony convictions alone: "The statute authorizes indeterminate sentencing once the court finds persistent felony offender status," and "defendants are eligible for persistent felony offender sentencing based *solely* on whether they had two prior convictions."  *Rivera*, 5 N.Y.3d at 66, 67 (emphasis in original).  *Rivera* emphasized that "the predicate felonies [are] the 'sole' determinant" for whether a judge is authorized to impose a PFO sentence, and that "*no* additional factfinding beyond the fact of two prior felony convictions is required" to impose the enhanced sentence." *Id*. at 68, 70 (emphasis in original).

In essence, *Rivera* construed the statutory directive that a sentencing judge articulate the reasons for imposing a class A-I sentence as one of procedure: the explanation itself satisfies the statutory requirement, regardless of whether it contains any facts beyond those respecting the defendant's predicate felonies. Accordingly, any other facts upon which the sentencing judge chooses to rely cannot properly be understood as "elements" of the underlying offense in terms of *Apprendi*, because they are not necessary factual predicates to the imposition of the sentence. Instead, they simply inform the judge's discretion to select an appropriate sentence within those ranges authorized by statute.[12]

---

[12] Petitioners urge that the PFO statute is constitutionally defective because the authorized ranges within which a judge has the discretion to operate are not always continuous. That is, if a sentencing judge decides that a PFO sentence is not warranted, the judge may not impose just *any* lesser sentence. Instead, the judge must impose a sentence authorized for a second felony offender, which, in some circumstances, might be well below that authorized for a PFO. *See Besser*, 601 F.3d at 172 n.7 (referring to this potential discontinuity as a sentencing "dead-zone"). For example, a defendant who stands convicted of a class D felony faces a sentence of between fifteen to twenty-five years and life as a PFO, but generally a maximum of seven years if the judge elects to sentence him as a second felony offender. *See* N.Y. Penal Law §§ 70.04(3)(c), 70.06(3)(d). Our Court is not persuaded that such a sentencing gap implicates the Sixth Amendment, for there is no constitutional mandate that a judge's discretion to reduce sentences exist unfettered. Nor is such a gap at all unique to the PFO scheme. For instance, a defendant convicted of his second class B felony drug offense may be sentenced to either (1) between two and twelve years in prison; or (2) probation, but the judge is not authorized to sentence the defendant to anything in between. *See* N.Y. Penal Law §§ 70.70(3)(b)(i), 70.70(3)(c), 60.04(5). In any event, the Supreme Court has never suggested — much less clearly held — that a sentencing scheme raises Sixth Amendment concerns simply because the court's discretionary reduction of a sentence will place the

Petitioners assert that *Rivera*'s construction of the PFO statute is belied by its text, specifically the provision stating that "[s]uch sentence may not be imposed *unless* . . . [the court] is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct [warrant the sentence.]." N.Y. Crim. Proc. Law § 400.20(1) (emphasis added). If, as petitioners contend, those findings as to the defendant's history and character are factual predicates essential to the imposition of the A-I sentence, the PFO statute would violate the Sixth Amendment. The New York Court of Appeals acknowledged as much: "If we had construed the statutes to require the court to find additional facts about the defendant before imposing a recidivism sentence, the statutes would violate *Apprendi*." *Rivera*, 5 N.Y.3d at 67. But, as we have already observed, the court plainly stated that it "did not read the law that way." *Id.*

Whether our Court agrees or disagrees with the Court of Appeals' construction of New York law is of no moment. As the Supreme Court has long held, "state courts are the

---

defendant in a significantly lower sentencing range. *See Williams v. Artuz*, 237 F.3d 147, 153-54 (2d Cir. 2001) (habeas relief barred where "no Supreme Court holding" supporting the petitioner's claim).

ultimate expositors of state law," *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), and "[n]either this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). More, it would be perverse for a federal court to discourage a state court from searching for "every reasonable construction" of a state statute to "save [the] statute from unconstitutionality." *Skilling v. United States*, 130 S. Ct. 2896, 2929-30 & n.41 (2010) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895); *see also United States v. Magassouba*, 544 F.3d 387, 404 (2d Cir. 2008) (collecting cases discussing rule of constitutional avoidance); *In re Jacob*, 86 N.Y.2d 651, 667 (1995) (same).

Of course, we recognize that we are bound only by the New York Court of Appeals' interpretation of what the terms of the statute mean, and that we are not similarly constrained by that court's pronouncement of the statute's "operative effect" for constitutional purposes. *See Wisconsin v. Mitchell*, 508 U.S. 476, 483-84 (1993). Yet the decision in *Rivera* was not merely a characterization of the

PFO statute's practical operation, but an exposition of its terms.  Under *Rivera*, the statute authorizes a class A-I sentence once the court establishes the defendant's status as a persistent felony offender, and a judge may impose an enhanced sentence based on the defendant's criminal history alone.  *Rivera*, 5 N.Y.3d at 66, 70-71.

We must presume that the New York Court of Appeals meant what it said: the statutory directive to consider the history and character of the defendant, and the nature and circumstances of his crime, is a procedural requirement that is only triggered once a judge is already *authorized* to impose the class A-I sentence.  According to *Rivera*, it would not be an error of law for a sentencing judge to impose a class A-I sentence based solely on the recidivism findings alone.  "Once a defendant is adjudged a persistent felony offender, a recidivism sentence cannot be held erroneous as a matter of law, unless the sentencing court acts arbitrarily or irrationally."  *Id.* at 68.  Lower courts in New York, as they must, consistently rely upon that construction in sentencing.  *Compare People v. Bazemore*, 52 A.D.3d 727, 728, 860 N.Y.S.2d 602, 603 (2d Dep't 2008) (noting that lower court's "conclusory recitation"

insufficient to comply with procedural requirements of the PFO statute), *and People v. Murdaugh*, 38 A.D.3d 918, 919-20, 833 N.Y.S.2d 557, 559 (2d Dep't 2007) (same), *with People v. Tucker*, 41 A.D.3d 210, 212, 839 N.Y.S.2d 15, 18 (1st Dep't 2007) (affirming PFO sentence based solely on lower court's evaluation of defendant's criminal history), *and People v. Young,* 41 A.D.3d 318, 319-20, 838 N.Y.S.2d 550, 551-52 (1st Dep't 2007) (same).

Petitioners also observe that in *Rivera*, the Court of Appeals reaffirmed that at step two of New York's PFO scheme, "the People retain the burden to show that the defendant deserves a higher sentence," *see* 5 N.Y.3d at 68, and argue that this shows that the effect of the statute is to require additional factfinding before an A-I sentence may be lawfully imposed.  We disagree with this characterization, for again, it misconstrues the effect of the facts found at this step.  *Rivera*'s reference to the State's "burden"  notwithstanding, the court made clear that "Criminal Procedure Law § 400.20, by authorizing a hearing on facts relating to the defendant's history and character, *does not grant defendants a legal entitlement to have those facts receive controlling weight in influencing the court's*

*opinion*." *Id*. (emphasis added); *see also id.* (indicating similarly that "a defendant adjudicated as a persistent felony offender has a statutory right to present evidence that *might influence the court to exercise its discretion* to hand down a sentence as if no recidivism finding existed" (emphasis added)).

Thus, while the meaning of *Rivera*'s reference to the State's "burden" is not entirely clear — it might, for example, mean that the State is obligated to prove by a preponderance of the evidence any of the facts it introduces in an attempt to persuade the sentencing judge, or might merely refer in an informal sense to the notion that it typically will be incumbent upon the State to oppose sentencing arguments advanced by defendants — the Court of Appeals was emphatic that the statute does *not* impose an overarching evidentiary burden upon the State that must be satisfied before the sentencing court may lawfully impose an A-I sentence. In other words, although the sentencing judge, in considering whether to impose the statutorily authorized A-I sentence or instead a lesser sentence, "may implicitly rule on those facts he deems important to the exercise of his sentencing discretion," the facts in

question "do not pertain to whether the defendant has a legal *right* to a lesser sentence," a distinction that "makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." *Blakely*, 542 U.S. at 309 (emphasis in original).

In sum, because the New York Court of Appeals has interpreted step two of the PFO sentencing scheme as a procedural requirement that informs only the sentencing court's discretion, the New York courts were not unreasonable to conclude that this consideration is unlike the factfinding requirements invalidated in *Blakely* and *Cunningham*.[13]  Here, under the New York Court of Appeals' construction, the *Apprendi* maximum for each petitioner was fixed at that of a class A-I felony once the recidivism findings were established: an indeterminate sentence, with a

---

[13] Indeed, as construed by the New York Court of Appeals, the step two inquiry under the PFO statute might well be analogized to the judicial consideration of statutory factors that Congress asks of district court judges in the federal system.  *See* 18 U.S.C. § 3553(a).  Although § 3553(a) applies to all federal sentences, whereas the challenged step two inquiry applies only to PFO sentences, that distinction does not bear on our Sixth Amendment analysis.  Under both schemes the required discretionary assessment will have an impact on the sentence ultimately imposed, but not an *unconstitutional* impact, because the court is merely "finding facts" to aid in the selection of an appropriate sentence within a pre-determined range authorized by statute.  And "[w]e have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *United States v. Booker*, 543 U.S. 220, 233 (2005).  Just as "[i]n a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail," *Blakely*, 542 U.S. at 309, a third-time felon in New York knows that he is risking twenty-five years to life in prison.

minimum term of between fifteen and twenty-five years, and a maximum term of life in prison.  *See* N.Y. Penal Law § 70.10(2).  Under *Rivera*, any facts that the sentencing judge considered beyond those respecting recidivism do not implicate the Sixth Amendment, for they did not — and could not — lead to a sentence in excess of that *Apprendi* maximum.  Petitioners' first argument therefore does not persuade us that habeas relief is warranted.

Petitioners' second argument also focuses on the step two determination required under the PFO statute.  They contend that — notwithstanding the Court of Appeals' authoritative construction in *Rivera* — the PFO statute continues to require unconstitutional factfinding, because even assuming the predicate felony convictions are sufficient to authorize a PFO sentence, the mere *fact* of those convictions does not suffice.  Instead, a sentencing judge must form an opinion about the *nature* of those convictions before imposing a PFO sentence, an endeavor that necessarily entails factfinding beyond the scope of *Almendarez-Torres*.  That is, a court is required to consider subsidiary facts and surrounding circumstances of those convictions to arrive at a conclusion whether "extended

incarceration and life-time supervision will best serve the public interest."  N.Y. Penal Law § 70.10; *see Rivera*, 5 N.Y.3d at 70-71 (noting that a sentencing judge would be authorized to impose a class A-I sentence with no further factual findings, "[i]f, for example, a defendant had an especially long and disturbing history of criminal convictions"); *see also Young*, 41 A.D.3d at 320, 838 N.Y.S.2d at 552 (affirming sentence imposed based on "court's discretionary evaluation of the seriousness of defendant's criminal history").  Petitioners urge that this assessment is a factfinding endeavor under *Blakely*, and must therefore be reserved for a jury.

Assuming — without deciding — that petitioners are correct in reading New York law to require a sentencing judge to consider subsidiary facts respecting a defendant's criminal history before imposing a PFO sentence, we are not persuaded that such consideration equates to judicial "factfinding" in violation of *Blakely*.  At bottom, petitioners urge that the *Almendarez-Torres* exception to the rule of *Apprendi* should be read narrowly (and the rule of *Blakely* broadly) to forbid a sentencing judge from forming an opinion about a defendant's criminal history, based on

facts underlying those prior convictions, before imposing a recidivism sentence.  Yet there is no clear holding of the Supreme Court to command such a result.[14]  "Given the lack of holdings from th[e] [Supreme Court]" construing the recidivism exception as narrowly as petitioners urge, "it cannot be said that the state court unreasonably applied clearly established federal law."  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (internal alterations and quotation marks omitted); *see also Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (declining to find a legal principle "clearly established" in light of Supreme Court precedents that "have not been a model of clarity," and "have not established a clear or consistent path for courts to follow").

_____

[14] The range of opinions authored by the Supreme Court in *Shepard* v. *United States*, 544 U.S. 13 (2005), bespoke the lingering uncertainty surrounding the recidivism exception, and suggested that the Court might be poised to reconsider its holding in *Almendarez-Torres*.  *See id.* at 25 (Souter, J., for a plurality) (questioning whether facts relating to a defendant's prior conviction could be considered by a sentencing judge in light of *Apprendi*); *id.* at 27-28 (Thomas, J., concurring in part and concurring in the judgment) (opining that the recidivism exception to *Apprendi* had been eroded and should be overruled); *id.* at 37-38 (O'Connor, J., dissenting) (challenging the plurality's purported extension of *Apprendi*, and defending the traditional use of recidivism as a sentencing factor).  In the intervening five years, however, the Court has not undertaken such a reconsideration of *Almendarez-Torres*, much less reversed or even limited its holding.  Thus, in our own review of federal sentences, we have concluded that, despite the reservations expressed in *Shepard*, "*Almendarez-Torres* continues to bind this court in its application of *Apprendi*."  *United States v. Snype*, 441 F.3d 119, 148 (2d Cir. 2006); *see also United States v. Bonilla*, - - - F.3d - - -, No. 09-1799-cr, 2010 WL 3191402, at *8-9 (2d Cir. Aug. 13, 2010) (rejecting, as frivolous, contention that prior conviction exception of *Almendarez-Torres* should be overturned).

Given the lack of guidance as to the precise scope of the recidivism exception, it is unsurprising that the exception does not enjoy uniform application among appellate courts charged with reviewing federal sentences. For example, some courts, including our own, have held that the recidivism exception encompasses such "related facts" as the type and length of sentence imposed, and whether the defendant was on probation when the crime was committed. *United States v. Cordero*, 465 F.3d 626, 632-33 n.33 (5th Cir. 2006); *see also United States v. Corchado*, 427 F.3d 815, 820 (10th Cir. 2005); *United States v. Williams*, 410 F.3d 397, 402 (7th Cir. 2005); *United States v. Fagans*, 406 F.3d 138, 141-42 (2d Cir. 2005). In contrast, the Ninth Circuit has concluded that the defendant's probationary status at the time of the crime does *not* fall within the recidivism exception. *See Butler v. Curry*, 528 F.3d 624, 636 (9th Cir. 2008). Yet, notably, the Ninth Circuit has also acknowledged that the principle remains unsettled, and accordingly has refused to grant habeas relief when a state court has concluded that probationary status *may* constitutionally be relied upon as a recidivism-based sentence enhancement. *Kessee v. Mendoza-Powers*, 574 F.3d

675, 679 (9th Cir. 2009).

So too here. It might well be constitutionally significant whether a sentencing judge is required to find, for example, that a defendant's criminal history is "especially violent" before imposing a sentence, or whether, as in New York, a sentencing judge simply must find that the nature of his criminal history justifies "extended incarceration and life-time supervision." Or, perhaps after *Blakely* and *Cunningham*, it does not matter. The Supreme Court may answer that question at some future time. But, if our Court cannot divine a clear answer from the Court's existing holdings, AEDPA prevents us from faulting a state court for selecting one reasonable conclusion over another. For the time being, the recidivism exception remains, and the Supreme Court has yet to assess a statute in light of *Blakely* that tethers the authorization for an enhanced sentence solely to findings respecting recidivism. We therefore cannot say that the state courts unreasonably applied clearly established Supreme Court precedent in concluding that the PFO statute is simply different in kind from those invalidated in *Blakely* and *Cunningham*.

*    *    *

To conclude, the state courts were not unreasonable to discern an appreciable distinction between the PFO statute and those struck down in *Blakely* and *Cunningham*: the Washington and California statutes stripped sentencing judges of any discretion to impose an elevated sentence *unless* they found an additional fact not embodied in the jury verdict. In *Blakely*, a defendant found guilty of kidnaping was entitled to a sentence of forty-nine to fifty-three months, but for an additional finding of "substantial and compelling reasons justifying an exceptional sentence." 542 U.S. at 299. In *Cunningham*, a defendant found guilty of continuous sexual abuse of a child was entitled to a sentence of twelve years, but for an additional finding of "circumstances in aggravation." 549 U.S. at 277.

In contrast, the PFO statute — as interpreted by the New York Court of Appeals — creates a recidivist sentencing scheme in which the only factual predicates necessary to impose the enhanced sentence relate to the defendant's criminal history. Unlike in *Blakely* and *Cunningham*, recidivism findings are the touchstone: the predicate felonies alone expand the indeterminate sentencing range

within which the judge has the discretion to operate, and that discretion is cabined only by an assessment of defendant's criminal history.  And the Supreme Court has not yet sounded the death knell for recidivist sentencing laws, nor do its precedents counsel the extent to which a sentencing judge may consider facts respecting recidivism to guide the exercise of her sentencing discretion.  The petitions are therefore denied.

**Conclusion**

For the foregoing reasons, the order granting the writ of habeas corpus to Petitioner-Appellee Portalatin is REVERSED.  The orders denying the writ to Petitioner-Appellants Morris and Phillips are AFFIRMED.  The panel opinion, 601 F.3d 163, is hereby VACATED.

# **Appendix A.**

New York Penal Law § 70.10:

1. Definition of persistent felony offender.

(a) A persistent felony offender is a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies, as provided in paragraphs (b) and (c) of this subdivision.

(b) A previous felony conviction within the meaning of paragraph (a) of this subdivision is a conviction of a felony in this state, or of a crime in another jurisdiction, provided:

(i) that a sentence to a term of imprisonment in excess of one year, or a sentence to death, was imposed therefor; and

(ii) that the defendant was imprisoned under sentence for such conviction prior to the commission of the present felony; and

(iii) that the defendant was not pardoned on the ground of innocence; and

(iv) that such conviction was for a felony offense other than persistent sexual abuse, as defined in section 130.53 of this chapter.

(c) For the purpose of determining whether a person has two or more previous felony convictions, two or more convictions of crimes that were committed prior to the time the defendant was imprisoned under sentence for any of such convictions shall be deemed to be only one conviction.

2. Authorized sentence. When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized . . . for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record.

**Portalatin v. Graham**
**07-1599**

WINTER, <u>Circuit Judge</u>, with whom Judges Pooler and Sack concur,

dissenting:

I respectfully dissent. My dissent assumes familiarity with the panel opinion, <u>Besser v. Walsh</u>, 601 F.3d 163 (2d Cir. 2010), and will be limited to a response to Judge Wesley's opinion.

These appeals concern petitions for writs of habeas corpus in which the petitioners challenge the constitutionality of what actually happened in their sentencing proceedings. Petitioners claim that the sentencing judges enhanced petitioners' sentences beyond the standard maximum for their crimes of conviction based on the sentencing judges' findings of facts that were not found by a jury, admitted by petitioners, or sheltered by the Supreme Court's decision in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 247 (1998), which held that the fact of prior conviction need not be treated as an element of criminal offense. That some kind of factfinding occurred with regard to each of the petitioners has not been seriously questioned, and that extensive factfinding occurred in one of the cases was expressly conceded in the <u>in banc</u> oral argument by the Solicitor General of New

1

York.  My colleagues rely heavily upon AEDPA deference[1] but identify only one constitutional argument dispositive of the claims of all petitioners -- regarding the applicable maximum sentences for <u>Apprendi</u>[2] purposes -- and that one has been specifically rejected by the Supreme Court in <u>Cunningham v. California</u>, 549 U.S. 270 (2009) and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).  Except for that discussion, my colleagues' opinion never responds directly to petitioners' claims and proffers no other identifiable constitutional theory to which AEDPA deference can be given.  Instead, it undertakes an abstract discussion of New York Penal Law Section 70.10 and New York Criminal Procedure Law Section 400.20, New York's Persistent Felony Offender ("PFO") sentencing statute, that demonstrates only that the PFO statute <u>can</u> be applied in a constitutional manner.  However, these appeals are not facial challenges to the statute but rather to the manner in which the statute was <u>actually applied</u> to each petitioner.[3]

---

[1]Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.  <u>See</u> <u>Dolphy v. Mantello</u>, 552 F.3d 236, 238 (2d. Cir. 2009) ("When the state court has adjudicated the merits of the petitioner's claim, we apply the deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which we may grant a writ of habeas corpus only if the state court's adjudication 'was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.'" (quoting 28 U.S.C. § 2254(d))).

[2]<u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

[3]To dispel any doubt that the original panel had an accurate view of New York law, I set out the details of the original panel's understanding of sentencing under the PFO statute in Exhibit A to this opinion.  To avoid any claim that I am misstating the various steps or legal effects of PFO sentencing, the Appendix cites as support, where pertinent, the PFO statute, <u>People v. Rivera</u>, 5 N.Y.3d 61 (N.Y. 2005), and the majority opinion.

2

The dissent will first discuss the sentencings of the three remaining petitioners (five petitioners were involved in the panel proceeding).  It will then turn to the majority opinion with regard to the four issues at stake in this proceeding, giving full AEDPA deference to all relevant arguments:  (i) what are the maximum sentences applicable to petitioners for Apprendi purposes; (ii) whether judicial factfinding altered the maximum sentence applicable to each petitioner; (iii) if so, whether such judicial factfinding was permissible under Almendarez-Torres; and (iv) whether all of the judicial factfinding was permissible because it involved traditional sentencing considerations.

a) The Petitioners' Sentencings

The sentencings of the three petitioners represent a fair cross-section of the various issues at stake in this in banc.[4]

1) Phillips

Phillips' sentencing was the simplest.  He was convicted of a Class C felony, robbery in the second degree, carrying a maximum sentence as a second felony offender of 15 years.  N.Y. Penal Law § 70.06(3)(b).  Phillips had six prior felony convictions:  two burglaries in the third degree; grand larceny

---

[4]There is a difficulty in analyzing the various sentencing proceedings arising from the emergence of the Almendarez-Torres issue at the in banc stage.  None of the sentencing courts believed it necessary to distinguish between facts relating to the predicate PFO convictions that might be sheltered under Almendarez-Torres and other facts relating to the character, history, and criminal conduct of the particular defendant.  The original panel remanded for an examination of harmless error claims. Besser, 601 F.3d at 188-89.  That remand would have included claims that some facts might be sheltered under the Almendarez-Torres umbrella.

3

in the fourth degree; attempted robbery in the second degree; attempted robbery in the third degree; and attempted criminal sale of a controlled substance in the third degree. The sentencing court found:

> Defendant has demonstrated time and again, throughout his entire adult life, that he cannot be trusted to function normally in society and that he is unwilling and unable to rehabilitate himself. The history and character of defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision are warranted to best serve the public interest. CPL 400.20(1); PL 70.10.

This case arguably raises serious Almendarez-Torres issues. The principal document in the record apparently is the prosecution's PFO motion containing Phillips' legal history. The conclusory statement of the sentencing court, while clearly a finding of fact for Apprendi purposes,[5] may have been limited to inferences drawn solely from the predicate PFO convictions and felony of conviction and arguably fall within an interpretation of Almendarez-Torres entitled to AEDPA deference. The Almendarez-Torres issue, if raised by the prosecutors, could have been addressed by the district court pursuant to the original panel remand.

---

[5]Conclusory statements such as these made by the sentencing court have been treated by the Supreme Court as findings of fact. See Cunningham v. California, 549 U.S. 270, 277, 288-89 (2009) (treating sentencing judge's finding of "circumstances in aggravation or mitigation of the crime" as findings of fact); Blakely v. Washington, 542 U.S. 296, 299, 303-04 (2004) (treating sentencing judge's finding of "substantial and compelling reasons justifying an exceptional sentence" as findings of fact).

4

2) Portalatin

Portalatin was convicted of second degree kidnapping and first degree robbery, both Class B felonies carrying a maximum of 25 years as a second felony offender. N.Y. Penal Law § 70.06(3)(a). Portalatin's sentencing involved similar but somewhat more extensive conclusions, including some facts outside any reasonable interpretation of Almendarez-Torres. The prosecution moved by letter for PFO sentencing based on two prior felony convictions, attempted burglary in the second degree and attempted criminal sale of a controlled substance in the fifth degree. The sentencing court also had before it the legal history of Portalatin as well as a report prepared for the defense that covered virtually all aspects of his life. The court concluded:

> [L]ooking back on the history of this defendant, and having read these reports . . . . [H]e began his criminal career in 1989, and we have beginning from that point on, the failure to take advantage of opportunities that might have provided drug treatment, that might have in some way assisted him.
> We have bench warrants repeatedly. We have parole revocations, and repeated parole revocations to the extent that it's only when these sentences maxed out that he finally is released, and no sooner is he released than there is a new crime.
> . . . .
> He certainly has earned a persistent adjudication as I look at this Rap sheet and the circumstances of this offense and other offenses, and I'm going to adjudicate him a persistent felony offender.

Some of the facts found may be sheltered by an arguably reasonable interpretation of <u>Almendarez-Torres</u>.  However, missed opportunities for drug treatment and the issuance of bench warrants may not be facts relating to PFO convictions, although reliance on them may well have been harmless.  All these matters could have been resolved on the original panel remand.

    3) Morris

    Morris's sentencing involved extensive factfinding.  After his conviction on 16 counts of criminal contempt for violating orders prohibiting contact with his girlfriend, Class E felonies, the prosecutor entered evidence of convictions for (i) attempted robbery in the third degree; (ii) grand larceny in the fourth degree and attempted criminal possession of a controlled substance in the fifth degree (deemed in the aggregate to be one conviction pursuant to N.Y. Penal Law Section 70.10(1)(c)); and (iii) robbery in the third degree.  This evidence qualified Morris as a PFO.  The pertinent choice in Morris's case was between a Class E felony second offender sentence with a maximum of 4 years and a Class A-I sentence with a maximum of life.  N.Y. Penal Law § 70.06(3)(d).

    After an adjournment of the sentencing hearing to obtain a psychiatric examination of Morris, the sentencing judge considered the evidence.  This consideration included, <u>inter alia</u>, numerous documents such as the psychiatric evaluation,

6

tapes of 911 calls from Morris's girlfriend or her neighbors, evidence of numerous instances of obscene behavior on subways, numerous instances of violence or assault on subways, contemptuous behavior in court, contemptuous behavior toward a female prison guard, and a negative report on Morris from the Department of Probation. The defense evidence consisted largely of his girlfriend's testimony as to his lack of violent behavior.

After hearing argument by counsel, the court concluded that Morris should receive a Class A-I sentence. The court rendered extensive written findings of fact formally labeled "Findings of Fact." The court made a negative credibility finding with regard to the girlfriend's testimony. The court credited the prosecution's evidence described above and found that Morris exhibited a propensity for violence, "a disturbing lack of self-control and a pattern of abusive and contemptuous behavior, particularly toward women." It concluded that the "People . . . met their burden of establishing by a preponderance of the evidence that a sentence [as a Class A-I felon] is warranted." The sentencing was upheld on appeal.

The record of Morris's sentencing indicates consideration by the court of many actions and characteristics of Morris, and conflicting testimony, that are not related to or inferences drawn from his prior felonies or felony of conviction. The record also indicates that the sentencing judge engaged in what

7

he deemed to be factfinding to choose between the second offender Class E felony sentence with a four year maximum, and a Class A-I sentence with a minimum of 15 years and maximum of life.

b) The Majority Opinion

Blakely/Cunningham prohibit a sentencing court from finding facts that were not found by a jury, admitted by a defendant, or sheltered by Almendarez-Torres, where such facts are relied upon to elevate the otherwise applicable maximum sentencing range to one with a higher maximum. Cunningham v. California, 549 U.S. 270, 282-83 (2007); Blakely v. Washington, 542 U.S. 296, 303-04 (2004). Each petitioner argues that his sentencing involved such factfinding and altering of the otherwise applicable maximum sentence.

My colleagues argue that: (i) the maximum sentence applicable to all petitioners was, for Apprendi purposes, life; (ii) once two prior felony convictions are shown, the "second step" need not involve dispositive factfinding; (iii) a reasonable interpretation of Almendarez-Torres, if AEDPA deference is shown, allows the sentencing court to find facts relating to the predicate felonies sufficient to impose a Class A-I sentence; and (iv) nothing occurs under the PFO statute that is not recognized as discretionary sentencing using traditional factors. I deal with each argument seriatim.

1) Giving All Due AEDPA Deference, What is the Apprendi

8

Maximum for Each Petitioner?

My colleagues join the New York Court of Appeals in reasoning that because life imprisonment is the highest sentence to which a defendant is exposed under the PFO statute, life imprisonment is the maximum sentence for Apprendi purposes.[6] If my colleagues are correct that life imprisonment is the maximum sentence to which the petitioners were subject for Apprendi purposes, then I would agree that the petitions must be denied. But I do not agree.

As my colleagues' own description of Blakely indicates,[7] precisely the same argument was made in Blakely and rejected by the Supreme Court, which stated:

> The State nevertheless contends that there was no Apprendi violation because the relevant "statutory maximum" is not 53 months, but the 10-year maximum for class B felonies in § 9A.20.021(1)(b). It observes that no exceptional sentence may exceed that limit. See § 9.94A.420. Our precedents make clear, however, that the "statutory maximum" for Apprendi purposes is the maximum sentence

---

[6] My colleagues' opinion states: "[U]nder the New York Court of Appeals' construction, the Apprendi maximum for each petitioner was fixed at that of a class A-I felony once the recidivism findings were established: an indeterminate sentence, with a minimum term of between fifteen and twenty-five years, and a maximum term of life in prison. Under Rivera, any facts that the sentencing judge considered beyond those respecting recidivism do not implicate the Sixth Amendment, for they did not -- and could not -- lead to a sentence in excess of that Apprendi maximum." Maj. op. 54 (internal citation omitted).

[7] My colleagues quoted Blakely as saying that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Maj. op. 29 (quoting Blakely, 542 U.S. at 303). They also observed that this "'statutory maximum' may not necessarily coincide with the maximum penalty prescribed by the penal code." Id.

9

> a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>.

<u>Blakely</u>, 542 U.S. at 303. That the Court directly ruled on this issue is underlined by Justice O'Connor's dissent. <u>Id.</u> at 318 ("Under the majority's approach, any fact that increases the upper bound on a judge's sentencing discretion is an element of the offense.") (O'Connor, J., dissenting).

Each petitioner concedes that he was "eligible for," "subject to," etc., a Class A-I sentence solely because of his prior multiple felonies. Each also argues that without the findings of facts as to which the prosecution bore the burden of proof and that were not found by the jury (discussed in the next subsection), he had to be sentenced within a range carrying a lower maximum. No party disputes the existence of a choice between sentencing within a range with a lower maximum and sentencing to a Class A-I term. <u>Blakely</u> is therefore directly on point.

<u>Cunningham</u> reaffirmed <u>Blakely</u> in this respect. 549 U.S. at 288-89 (using <u>Blakely</u>'s definition of the <u>Apprendi</u> maximum to find California's sentencing scheme unconstitutional). <u>Cunningham</u>, moreover, involved non-continuous sentences, as is the case in Morris's petition. In that regard, the <u>Cunningham</u> decision directly contradicts the statement in Footnote 12 of my colleagues' opinion that the Supreme Court has never suggested

10

that non-continuous schemes raise Sixth Amendment concerns.  Maj. op. 48.  In the very heart of the Court's holding, it stated:

> California's Legislature has adopted
> sentencing triads, three fixed sentences with
> no ranges between them.  Cunningham's
> sentencing judge had no discretion to select
> a sentence within a range of 6 to 16 years.
> His instruction was to select 12 years,
> nothing less and nothing more, unless he
> found facts allowing the imposition of a
> sentence of 6 or 16 years.  Factfinding to
> elevate a sentence from 12 to 16 years, our
> decisions make plain, falls within the
> province of the jury employing a beyond-a-
> reasonable-doubt standard, not the bailiwick
> of a judge determining where the
> preponderance of the evidence lies.

Cunningham, 549 U.S. at 292.

Similarly, in Morris's case, the sentencing judge had to choose between two ranges:  1.5 to 4 years and 15 years to life -- an eleven-year gap between the maximum in the lower range and the minimum in the higher range.  Cunningham is, therefore, also directly on point.

The reasoning adopted by my colleagues with respect to analyzing the maximum sentence for Apprendi purposes has thus been expressly rejected by the Supreme Court, and AEDPA deference is inapplicable.  See Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009) (AEDPA deference not applicable where state court's adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States") (internal quotation

11

marks omitted). The _Apprendi_ maximum for each petitioner is the maximum second felony offender sentence for their crime of conviction. That maximum in each case is less than life imprisonment.

2) Factfinding for _Apprendi_ Purposes

Believing that the immediately preceding discussion establishes that petitioners' PFO sentencing involved a choice between sentencing ranges with different maximum sentences for _Apprendi_ purposes, I turn to the next question: whether in petitioners' cases that choice was based on the sentencing judges' findings of facts beyond those found by the jury in the felony of conviction or admitted by the defendant. Whether the findings are sheltered by _Almendarez-Torres_ is dealt with in the next subsection.

Conspicuously absent from my colleagues' opinion is any clear denial that, in petitioners' cases, "step two" -- consideration of evidence relating to the character, history, and nature of the criminal conduct of the defendant -- involved factfinding beyond the multiple prior felonies.

Instead the opinion is at pains to establish that, under the PFO sentencing statute, two prior felonies alone "authorize"[8] a Class A-I sentence, that defendants are "eligible for"[9] or

---

[8]Maj. op. 47, 50, 51.

[9]Maj. op. 47.

12

"subject to"[10] a Class A-I sentence based "solely"[11] on two prior felonies; that two prior felonies are the "sole determinant for whether a judge is authorized to impose a PFO sentence";[12] that "no additional factfinding beyond the fact of two prior felony convictions is required"[13] to impose a PFO sentence; that two prior felony convictions are "necessary and sufficient"[14] to impose the enhanced sentence; and that the second step findings are not "necessary" for[15] or "essential to"[16] a recidivist sentence.

None of the quoted phrases purport to be mandatory, i.e., they do not state that two predicate felonies alone require a Class A-I sentence. All that the phrases purport to state is that the multiple predicate felonies alone: (i) trigger the PFO sentencing process, (ii) expose the defendant to the possibility of a Class A-I sentence, and (iii) may be sufficient in and of themselves to justify such a sentence. However, none of that is disputed, and none of that disposes of any of the appeals before us.

---

[10]Maj. op. 10.

[11]Maj. op. 38, 47, 51.

[12]Maj. op. 47.

[13]Maj. op. 47.

[14]Maj. op. 37.

[15]Maj. op. 48.

[16]Maj. op. 49.

13

All of the petitioners assert colorable claims that their Class A-I sentences were based on factfinding going beyond the predicate felonies, without which a second felony offender sentencing range with lower maximum sentences would concededly have been applicable. To put it another way, my colleagues have successfully defended the PFO statute against a facial attack by showing that the predicate felonies may alone justify a Class A-I sentence, while not addressing the claims before us that factfinding beyond the predicate felonies actually occurred and enhanced the sentences of the petitioners.

Without linking their discussion to any relevant and identifiable constitutional theory, my colleagues also downplay the importance of the second step, describing it as "procedural," one that merely informs the exercise of sentencing discretion. Maj. op. 51, 54. In fact, the Supreme Court has expressly held that

> broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of our decisions. If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.

Cunningham, 549 U.S. at 290 (citing Blakely, 542 U.S. at 305 & n.8). Regardless of whether the second step is labeled "procedural" or whether it informs discretion, the second step in the case of all petitioners involved which of two sentencing

14

ranges was to be selected and the choice was between ranges with different maximum sentences.

Conceding that facts beyond the felony convictions may be considered in the second step,[17] my colleagues also quote <u>Rivera</u> to the effect that defendants do not have "a legal entitlement to have those facts receive controlling weight in influencing the court's opinion." Maj. op. 52 (quoting <u>People v. Rivera</u>, 5 N.Y.3d 61, 68 (N.Y. 2005)) (emphasis omitted). Of course, the defendant has no "legal entitlement" to prevail at the second step or to have his or her evidence given "controlling weight."

No petitioner is arguing that showing up at a sentencing hearing and expressing remorse entitled him to sentencing as a second felony offender as a matter of law. Each is arguing only that judicial factfinding took place and unconstitutionally guided the choice between the two legally available sentencing ranges.

My colleagues make a final attempt to downplay the second step. They describe the statutory requirement of a statement of reasons by the sentencing judge for imposing a Class A-I range sentence rather than a lower range sentence as intended only to "facilitate[] an appellate review function that is distinct from

---

[17]My colleagues' opinion states: "[A]ny facts that the sentencing judge considered beyond those respecting recidivism do not implicate the Sixth Amendment, for they did not -- and could not -- lead to a sentence in excess of that <u>Apprendi</u> maximum." Maj. op. 54. The <u>Apprendi</u> maximum issue is discussed <u>supra</u>.

15

the issue of whether the PFO sentence was lawfully imposed."[18] Maj. op. 40. That characterization is correct so far as "lawfully imposed" means only that once two prior felonies have been proven, a defendant is legally "eligible for," "subject to," etc. a Class A-I sentence. It cannot mean more than that because it is also conceded that an appellate court can overturn the "lawfully imposed" sentence and resentence (or order resentencing) to a legally available lower range. For example, no one claims that a mistaken finding of fact relating to a defendant's prior bad conduct on which a sentencing judge based a Class A-I sentence could not be the ground for overturning on appellate review a Class A-I sentence on appeal. If not, it can hardly be said that no significant factfinding takes place in the second step.

My colleagues' avoidance of a definitive answer to whether factfinding beyond the predicate felonies may occur in the second step or to whether it did occur in the case of any of the petitioners, must be contrasted with the position taken by appellate counsel for the prosecution and by the Rivera decision itself. In the in banc oral argument, the New York Solicitor

---

[18]This is a peculiar basis for downplaying the significance of the second step, given that this court frequently remands appeals on the ground that the sentencing judge's statement of reasons is not sufficient to permit appellate review. See, e.g., United States v. Richardson, 521 F.3d 149, 159-60 (2d Cir. 2008); United States v. DeMott, 513 F.3d 55, 58 (2d Cir. 2008); United States v. Hall, 499 F.3d 152, 156-57 (2d Cir. 2007).

16

General conceded that facts were found in the sentencing proceedings.[19]  Moreover, in <u>Rivera</u>, the New York Court of Appeals used the words "fact" or "factfinding" freely with regard to the second step.  <u>See</u> <u>e.g.</u>, <u>Rivera</u>, 5 N.Y.3d at 67-68 (referring repeatedly to the sentencing court's consideration of "facts" found in the second step).  The court neither limited the inquiry to predicate crimes nor downplayed the importance of the second step.  The Court of Appeals described that step as one in which "the sentencing court . . . will consider holistically the defendant's entire circumstances and character, including traits touching upon the need for deterrence, retribution and rehabilitation unrelated to the crime of conviction."  <u>Rivera</u>, 5 N.Y.3d at 69 n.8.

With regard to the petitioners before us, the sentencing judges showed no signs of viewing the second step as anything but involving the consideration of evidence and the finding of facts.  As noted, in Morris's case, the sentencing judge made extensive findings of fact and formally labeled them as such.  <u>See</u> <u>supra</u> at 8.

Finally, the constitutional significance of the second step

---

[19]SG:  The judge found that [Morris] was a persistent felony offender on the two prior crimes and found quite a number of additional facts. . . .

Court:  With all three petitioners here, facts were found and were relied upon in imposing the PFO sentence that went beyond any of the convictions, isn't that right?

SG:  I believe that is true, [although] I'm not as familiar with the Portalatin facts.

17

is underscored by the statutory provision that "the burden of proof is upon the people" in this phase. N.Y. Crim. Proc. Law § 400.20(5). In the first step, the PFO predicate convictions must be proven beyond a reasonable doubt. Id. In the second step, "[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct" need be proven only by a preponderance of the evidence. Id. All relevant evidence must be considered and the ordinary rules of evidence, save for those relating to privileges, do not apply. Id. In Rivera's own words, "the People retain the burden to show that the defendant deserves the [Class A-I] sentence." 5 N.Y.3d at 68. My colleagues state that it is "not entirely clear" what this statement means. Maj. op. 53. In fact, it is a routine formulation pertinent to sentencing generally -- including the federal system, see 18 U.S.C. § 3553 -- where a range of sentences is permissible. It means what it says. If the prosecution failed to prove by a preponderance of the evidence that one or more of the petitioners "deserve," a Class A-I sentence, the petitioner would have been sentenced to a range with a lower maximum. Rivera, 5 N.Y.3d at 68

In short, however characterized, the second step with regard to the present petitioners involved the presentation of evidence upon which the sentencing judge found facts and chose between sentencing ranges with different maximum sentences. Nothing in

18

my colleagues' opinion, save for the discussion of <u>Almendarez-Torres</u>, responds to the claim of each petitioner that factfinding altered the sentencing and applicable maximum range.

3) Giving Full AEDPA Deference, What is the Effect of <u>Almendarez-Torres</u>?

The decision in <u>Almendarez-Torres</u> has played a minor role in this litigation until now.  None of the New York sentencing courts in the present petitions mentioned it, much less attempted to distinguish evidence or facts sheltered by <u>Almendarez-Torres</u> from those not sheltered.  In <u>Rivera</u>, the Court of Appeals mentioned <u>Almendarez-Torres</u> only with regard to proving the existence of prior convictions.  5 N.Y.3d at 67.  Certainly the original panel's remand would have allowed the district courts to consider whether facts found by New York sentencing courts in each of appellants' sentencing hearings were sheltered by <u>Almendarez-Torres</u>.

My colleagues' discussion of <u>Almendarez-Torres</u> concerns in part the breadth of that decision with regard to what facts are sheltered by it.  There are many variations here:  <u>e.g.</u>, (i) it shelters only the existence of the fact of the prior convictions; or (ii) it shelters only the existence of prior convictions and matters proven to a jury or admitted by the defendant in connection with the convictions; or (iii) it shelters the existence of the convictions, matters proven or admitted, and

19

matters relating to the convictions not proven to a jury or admitted by the defendant; and (iv) inferences drawn from any of the above. My colleagues give AEDPA deference to (iv). Maj. op. 56-57.

I will not quarrel with their conclusion because it is largely irrelevant at this stage. Even if AEDPA deference were shown to (iv), it disposes of none of the appeals before us, except perhaps for Phillips, as to whom the failure to rehabilitate may be an inference drawn solely from the predicate convictions. In the other sentencing proceedings before us, evidence was proffered and mentioned by the sentencing judges that was not even arguably covered by Almendarez-Torres. While consideration of Almendarez-Torres might identify some sheltered facts and then lead to a conclusion that other findings were harmless -- a difficult conclusion perhaps in Morris's case -- the panel left that to the remand.

I must also note that my colleagues' discussion of Almandarez-Torres implies that the PFO statute at the second step limits consideration, or findings, of facts to matters sheltered by that decision. Maj. op. 56 (addressing only the situation where "a sentencing judge . . . consider[s] subsidiary facts respecting a defendant's criminal history before imposing a PFO sentence"). Again, they fail to address appellants' claims of what actually happened at their sentencing hearings, where facts

20

going beyond matters relating to the prior convictions were allegedly found.

4) Giving Full AEDPA Deference, Is Factfinding Regarding Traditional Sentencing Factors Free of Apprendi Restraints?

Reference has been made throughout these proceedings to the fact that the second step and its factfinding involve the consideration of traditional sentencing factors and is not unlike the requirements of Section 3553(a).[20]  I agree but find the point irrelevant.

Blakely/Cunningham radically altered the use of traditional sentencing factors where findings of fact and conclusions regarding traditional factors alter maximum sentences.  Indeed, each of those cases involved sentencing enhancements altering maximum sentences based on generalized findings well within the range of traditional factors -- "substantial and compelling reasons justifying an exceptional sentence," Blakely, 542 U.S. at 299, and "circumstances in aggravation or mitigation of the crime," Cunningham, 549 U.S. at 277 -- but were still held unconstitutional.  As for Section 3553(a), that provision is certainly an expression of traditional factors, but it cannot be used to alter maximum sentences.  That is in fact what Booker was

_____

[20]My colleagues state that "the step two inquiry under the PFO statute might well be analogized to the judicial consideration of statutory factors that Congress asks of district court judges in the federal system."  Maj. op. 54 n.13.

21

about.[21]

                            CONCLUSION

     Except for the argument made with regard to maximum
sentences for <u>Apprendi</u> purposes, which has been specifically
rejected by the Supreme Court, nothing in my colleagues' opinion
identifies a constitutional argument that even arguably disposes
of Portalatin's and Morris's claims regarding factfindings
altering their maximum sentences.  I therefore respectfully
dissent.

---

[21]Some of the briefing has suggested that while the PFO statute as once applied
violated <u>Blakely</u>/<u>Cunningham</u>, <u>Rivera</u> altered its application in a way that renders it
constitutional.  Whether the PFO procedures are now different is irrelevant with
regard to the present petitions because the petitioners claim that the procedure under
which they were sentenced was unconstitutional.  <u>See</u> <u>Liberta v. Kelly</u>, 839 F.2d 77, 81
(2d Cir. 1988) (defendant could challenge the constitutionality of the criminal
statute under which he was convicted, even where the court affirmed his conviction by
excising prospectively the allegedly unconstitutional portions, because defendant had
been convicted under the unaltered statute).  In any event, if New York's application
of the PFO statute has been altered, the alteration can be considered when cases
involving petitioners subject to the newly altered procedures arise.

Exhibit A

Using a Class E felony as an example, the original panel's view of the mechanics (what happens) of PFO sentencing is as follows:

> The defendant is convicted of a felony. The maximum sentence for a first or second felony offender is 4 years. N.Y. Penal Law §§ 70.00(2)(e), 70.06(3)(e). After the conviction, the prosecution enters into evidence certified convictions or gets a stipulation from the defense, sufficient to prove beyond a reasonable doubt two or more prior felony convictions of the defendant. Maj. op. 8.
>
> Because of the prior convictions, and without more, the defendant has the status of a persistent felony offender and is "eligible for" or "subject to" a Class A-I felony sentence of 15 years to life. See People v. Rivera, 5 N.Y.3d 61, 66-67 (N.Y. 2005) (citing N.Y. Penal Law § 70.10(1)(a)); Maj. op. 10-11. The sentencing judge has, by virtue of the prior felony convictions alone, "authori[ty]" to impose a Class A-I sentence. See Rivera, 5 N.Y.3d at 66; Maj. op. 47.
>
> The "authority" to impose a Class A-I sentence is not absolute but is circumscribed. Before a Class A-I sentence may be imposed, the prosecution "retain[s] the burden to show that the defendant deserves the [Class A-I sentence]." Rivera, 5 N.Y.3d at 68; see also N.Y. Crim. Proc. Law § 400.20(5). The defendant may present evidence at a hearing to influence the sentencing court "to exercise its discretion to hand down a sentence as if no recidivism finding existed." Rivera, 5 N.Y.3d at 68; see also N.Y. Crim. Proc. Law § 400.20(1)); Maj. op. 9-10, 52.
>
> The sentencing judge has discretion to impose a Class A-I sentence or a lesser "authorized" sentence. See Rivera, 5 N.Y.3d

23

at 67; N.Y. Penal Law § 70.10(2); N.Y. Crim. Proc. Law § 400.20(1). The exercise of this discretion is guided by "factfinding" based on the evidence adduced at the sentencing hearing, including the prior felonies and the felony of conviction. See Rivera, 5 N.Y.3d at 66-68; N.Y. Penal Law § 70.10(2); N.Y. Crim. Proc. Law § 400.20(1)-(2); Maj. op. 52-53.

The choice between a Class A-I sentence and a lower sentence would, in the case of a Class E felony, be a choice between: (i) a Class A-I sentence with a range of a minimum of 15 years to a maximum of life, and (ii) a first or second felony offender sentence with a maximum of 4 years. Compare N.Y. Penal Law §§ 70.00(2)(e), 70.06(3)(e), with id. § 70.00(2)(a); see Rivera, 5 N.Y.3d at 68-69 n.7 (citing People v. Williams, 658 N.Y.S.2d 264, 265 (App. Div. 1997) (finding a Class A-I sentence to be "an improvident exercise of discretion" and ordering the resentencing of the defendant "as a second felony offender")); see also People v. Jennings, 822 N.Y.S.2d 501, 502 (App. Div. 2006) ("If the sentencing court had not found defendant a persistent felony offender, the maximum sentence it could have imposed would have been an indeterminate term of two to four years . . . ."); Maj. op. 10 (discussing possible sentences in the case of a Class D felony).

The sentencing judge may reach a variety of conclusions regarding the exercise of discretion. The nature and number of the prior felonies and the evidence leading to the felony of conviction may themselves be "sufficient" to justify the Class A-I sentence. See Rivera, 5 N.Y.3d at 70-71 ("If, for example, a defendant had an especially long and disturbing history of criminal convictions, a persistent felony offender sentence might well be within the trial justice's discretion even with no further factual findings."). Or the prior felony convictions and felony of conviction along with other evidence may be sufficient to justify a Class A-I felony sentence. See

24

*Rivera*, 5 N.Y.3d at 67-69; N.Y. Penal Law § 70.10(2); N.Y. Crim. Proc. Law § 400.20(1)-(2). Or the evidence may be such that the sentencing judge in his or her discretion imposes a first or second felony offender sentence. *See Rivera*, 5 N.Y.3d at 67 ("If, based on all it heard, the court's view of the facts surrounding defendant's history and character were different, the court might well have exercised its discretion to impose a less severe sentence."); N.Y. Penal Law § 70.10(2); N.Y. Crim. Proc. Law § 400.20(1).

Imposition of a Class A-I persistent felony offender sentence rather than a first or second felony offender sentence is subject to appellate review under a deferential standard. *See Rivera*, 5 N.Y.3d at 68 ("[O]nce a defendant is adjudged a persistent felony offender, a recidivism sentence cannot be held erroneous as a matter of law, unless the sentencing court acts arbitrarily or irrationally. The court's opinion is, of course, subject to appellate review, as is any exercise of discretion."). If an appellate court vacates the Class A-I sentence, it must substitute a first or second felony offender sentence with a maximum of 4 years in the case of a Class E felony or remand for that purpose. *See Rivera*, 5 N.Y.3d at 69 n.7 (citing *Williams*, 658 N.Y.S.2d at 265 (finding a Class A-I sentence to be "an improvident exercise of discretion" and ordering the resentencing of the defendant "as a second felony offender"); N.Y. Crim. Proc. Law § 470.20; *see also People v. LaSalle*, 95 N.Y.2d 827, 829, 734 N.E.2d 749, 750 (2000) (memorandum decision); *Jennings*, 822 N.Y.S.2d at 502 (finding that "if the sentencing court had not found defendant a persistent felony offender, the maximum sentence it could have imposed would have been an indeterminate term of two to four years").

25